STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| Appeal of Fisher | } | Docket No. 207-11-03 Vtec |
| | } | |
| | } | |

Decision and Order on Cross-Motions for Partial Summary Judgment

Appellant Kevin Fisher appealed from a decision of the Development Review Board (DRB) of the City of Burlington, granting Major Impact Development approval and site plan approval for an addition to Appellee-Applicant Lund Family Center, Inc.'s existing building, and for related site work. Appellant is represented by Lisa B. Shelkrot, Esq.; Appellee-Applicant Lund Family Center, Inc. (the Center) is represented by Andrew R. Strauss, Esq. and Robert F. O'Neill, Esq.; and the City is represented by Kimberlee J. Sturtevant, Esq.

Both Appellant and Appellee-Applicant have moved for summary judgment on the issue of whether the proposal is eligible for consideration within the use category of "community house." The Court issued an informal, preliminary ruling at a conference, but advised the parties that an additional breakdown of the usage numbers provided by

Appellee-Applicant would be required before the Court could complete its work on the pending motions, and that certain issues would require an evidentiary hearing. The parties agreed to bifurcate the evidentiary hearing. A June 9, 2005 hearing was set for disputed factual issues relating to whether certain categories of activities conducted at the Center are considered within the Center's principal use (or uses[1]), are accessory to that use or uses, or are separate uses which are not eligible for approval in this district and which must be conducted at another location. If the ruling resulting from these motions and that hearing allows the Center to proceed with the application on its merits before this Court, the merits hearing has been scheduled for June 23 and 24, 2005.

The following facts are undisputed unless otherwise noted. The Lund Family Center operates a residential treatment program for parenting or pregnant women and girls between the ages of 12 and 27, who have a mental health or a substance abuse diagnosis, or both. It has operated its program in its current building at 76 Glen Road for many[2] years; this property is in the Residential Low Density (RL) zoning district.

The Center provides a residence for a maximum of 20 clients at any time. The Center provides meals to the residents, their children, and staff from a central kitchen and dining room, and provides lunches to day students and to children in the on-site childcare program.

The Center provides an on-site school program for residents, former residents, and for approximately three day students per year who qualify for the program under state guidelines, serving approximately 25 students per year, with a maximum of 12 students at any given time.

The Center provides counseling, classes and programs on-site to residents and former residents on a variety of related issues, including childbirth, adoption and parenting, living skills, substance abuse treatment, and smoking cessation. Material facts are in dispute, or at least have not been provided in these motions and should be presented at the June 9, 2005 hearing, as to the extent to which the Center provides similar classes and programs away from the Center to other similar populations, including a teen pregnancy outreach program at Vermont middle and high schools.  Material facts are in dispute, or at least have not been provided in these motions and should be presented at the June 9, 2005 hearing, as to the extent to which the Center provides any of these programs on-site to individuals who have never been residents of the Center.

The Center provides welfare-to-work and transitional living services, adoption assistance, and parent support to former residents after they have moved back into the community, and provides these services to other similar populations in the Chittenden County area.  Material facts are in dispute, or at least have not been provided in these motions and should be presented at the June 9, 2005 hearing, as to the extent to which

the Center provides any of these programs at the Center to individuals who have never been residents of the Center.

The Center provides an on-site child care center licensed for up to twenty-nine children[3] as young as two weeks of age. The children attending the on-site child care center are the children of residents, former residents and current staff of the Center, and as space allows, children of the public not in those categories. Material facts are in dispute, or at least have not been provided in these motions and should be presented at the June 9, 2005 hearing, as to whether the inclusion of children in the child care program from the wider community has a therapeutic or programmatic purpose.

The Center maintains on-site business and administrative offices to support all its services and an on-site development office to bring in funding, donations and volunteer assistance for all its programs.

The parties dispute how certain uses of the new addition and existing space in the facility should be categorized as principal or accessory uses with respect to this facility, or as uses which are not allowed in this district under the Zoning Ordinance. The parties agree as to the square footage (total 18,130) allocated to each proposed use, as follows:

Residential (except kitchen & dining)     8041

Kitchen & Dining                          1669

On-site Education                         2123

| | |
|---|---|
| Childcare | 2080 |
| Adoption | 1560 |
| Child & Family Services | 918 |
| Parent Education | 453 |
| Administration and Business office | 892 |
| Development Office | 394 |

Because of the unresolved factual questions that will be the subject of the June 9, 2005 hearing, we cannot now definitively determine the percentages of uses that are allocated to principal and accessory uses. Based on the revised usage chart filed on May 11, 2005, we can make a preliminary estimate as follows. We must allocate certain staff functions proportionally to the 'former and present resident' category, on the one hand, and to the 'never-resident' category on the other. Until the facts are established at the June 9, 2005 hearing, we provisionally make this calculation exclusive of the adoption and child and family services program, other than as it serves residents and former residents, and provisionally count the administration, business, and development offices as accessory to the principal use. Those portions of the adoption program and the child and family services program that serve persons other than residents and former residents, while they may be programmatically related to the Center's mission, are not uses that are allowed to

be conducted at the subject property, as neither general office uses nor medical (counseling) offices are allowed in the district, and community centers are only allowed on a 'major or collector street.' At the June 9, 2005 hearing, Appellee-Applicant may wish to present evidence as to how the space for the adoption waiting room, meeting rooms, and the adoption and child and family services counseling rooms will be re-allocated if those programs may not be run from the subject property.

A total of 15,900 square feet remains after the adoption and child and family services space allocated to never-resident programs is removed. The Court understands that this will have to be added back in and recalculated based on the June 9, 2005 evidence. If day care for children of staff and never-residents is excluded, then 13,659 square feet or 85.9% is allocated to the principal use, that is, serving residents and former residents. If day care for children of staff and never-residents is included, then 14,285 square feet or 89.8% is allocated to the principal use, that is, serving residents and former residents. Material facts are in dispute as to whether the on-site education of never-residents, and the associated meals and staff time serving them, and the administration, business and development office functions should all be counted as accessory, or whether some of them, like the adoption and child and family services, must be conducted off-site. Even if they are all counted as accessory, it appears that the Center will qualify for consideration as a "community house" on the merits of its application.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that both Motions for Summary Judgment are denied at the present time in that material facts remain in dispute. However, at the close of the June 9, 2005, hearing, it should be possible to resolve all the legal issues posed by the motions. We will hold a further conference at that time or on June 10, 2005 by telephone, so that all parties can prepare, if necessary, for the hearing scheduled for June 23 and 24.

Done at Berlin, Vermont, this 7th day of June, 2005.

_____
Merideth Wright
Environmental Judge

---

[1] The question of whether the Zoning Ordinance allows more than one principal use per lot is also before the Court in these motions. Nothing in the Burlington ordinance precludes multiple uses on a single lot. Unlike the cases cited by Appellant, the DRB has not interpreted the ordinance to preclude multiple uses on a single lot. However, each proposed use must be within an allowed category for the district. In the present case, the child care program may qualify for consideration as a separate principal use; however,

depending upon the evidence to be presented at the hearing on June 9, 2005, Appellee-Applicant may wish to proceed with it under the present application.

[2]     The question of whether any of the proposed uses for the building may be eligible for analysis as a pre-existing, non-conforming use is not before the Court in the present motions.

[3]     A child care center for over twenty children is categorized under the Zoning Ordinance as a "large" child care center that is a conditional use in any Residential zoning district.